978 F.2d 693
 Nicholas BABAKITIS, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 92-3187.
 United States Court of Appeals,
Federal Circuit.
 Oct. 28, 1992.
Rehearing Denied Jan. 21, 1993.
 
 Nicholas Babakitis, pro se.
 Steven L. Schooner, Trial Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted, for respondent. With him on the brief, were Stuart L. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Sharon Y. Eubanks, Asst. Director. Also on the brief, were Vernon B. Parker, Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel and Murray M. Meeker, Atty., Office of Personnel Management, of counsel.
 Before NIES, Chief Judge, RICH, Circuit Judge, and MILLS, District Judge.*
 NIES, Chief Judge.
 
 
 1
 Nicholas Babakitis seeks review of a decision by the Merit Systems Protection Board in Docket Nos. NY831M8710485-1 and NY831M87C0485-1, which affirmed the Office of Personnel Management's determination that Babakitis had received an overpayment of civil service retirement benefits. We reverse.BACKGROUND
 
 
 2
 Babakitis served on active duty in the United States Army and Air Force for a period of 10 years ending in 1952. Later he worked in civilian positions in the Navy and as an aerospace engineer with the National Aeronautics and Space Administration (NASA). In 1973, NASA eliminated Babakitis's position through a reduction in force. That year he applied for and was granted a discontinued service retirement annuity under the Civil Service Retirement Act (CSRA). 5 U.S.C. § 8331 et seq. (1988). The CSRA retirement annuity was based on the above periods of military and civilian service. There is no dispute that the annuity was properly awarded and the amount properly calculated when it was granted. The dispute is over whether or not subsequent events nullify petitioner's entitlement to credit under CSRA for his ten-year period of military service.
 
 
 3
 The record indicates that after retirement from NASA, Babakitis enlisted in the United States Naval Reserve on June 1, 1974, and was recalled to active duty on October 16, 1976. During this second period of active duty, he became physically disabled following surgery and was awarded a disability retirement annuity by the Navy in October 1977 based on 100 percent disability.
 
 
 4
 In August 1986, OPM notified Babakitis that due to his receipt of the military disability annuity, he had been overpaid since June 30, 1973, by the total amount of his civil service annuity ($215,319.24). Per OPM, since none of Babakitis's military service could be credited toward his civil service retirement annuity, he did not have sufficient years of service to meet the eligibility requirements for an immediate civil service annuity in 1973. OPM informed him of the option of retroactively waiving his military disability pay, if he repaid the government for the amounts that he received for those benefits.
 
 
 5
 Upon reconsideration, OPM reached a different conclusion. It decided that Babakitis was entitled to the immediate civil service annuity in 1973 based in part on his military service, but that once he began receiving the military disability annuity in 1977, he could no longer receive credit under CSRA for his initial military service. This reduced his alleged overpayment to $100,558.14. OPM further reduced its claim against Babakitis by making additional corrections to its calculation and then sought to collect the amount due by debiting his CSRA annuity payment.
 
 
 6
 After OPM denied Babakitis's request for further reconsideration of its decision, Babakitis appealed to the Board. In a May 7, 1990, initial decision, the administrative judge found that no overpayment had been made and reversed OPM's determination. On OPM's petition for review, the Board reversed the administrative judge's decision, and remanded the appeal to allow for adjudication of other issues. 47 M.S.P.R. 470. After completing one more round with the Board, Babakitis filed an appeal with this court.
 
 DISCUSSION
 
 7
 We must uphold a Board decision unless it is: (1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (2) obtained without adherence to procedural laws, rules, or regulations; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). Cheeseman v. Office of Personnel Mgmt., 791 F.2d 138, 141 (Fed.Cir.1986), cert. denied, 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 844 (1987). In this case, we conclude that the Board's decision is contrary to statutory law.
 
 
 8
 At the center of the instant dispute is section 8332(c), United States Code, Title 5 (1988), which specifies when military service may and may not be credited toward an employee's "service" for purposes of computing a civil service retirement benefit. Section 8332(c) provides, in pertinent parts, as follows:
 
 
 9
 (1) Except as provided in paragraph (2) of this subsection ... of this section--
 
 
 10
 (A) the service of an individual who first becomes an employee or Member before October 1, 1982, shall include credit for each period of military service performed before the date of the separation on which the entitlement to an annuity under this subchapter is based ...
 
 
 11
 (2) If an employee or Member is awarded retired pay [including pay for disability retirement by the military] based on any period of military service, the service of the employee or Member may not include credit for such period of military service unless the retired pay is awarded--
 
 
 12
 (A) based on a service-connected disability--
 
 
 13
 (i) incurred in combat with an enemy of the United States; or
 
 
 14
 (ii) caused by an instrumentality of war and incurred in line of duty during a period of war as defined by section 301 of title 38; or
 
 
 15
 (B) under chapter 67 of title 10.
 
 
 16
 (Emphasis added.) Thus, credit for years of military service must be included in a CSRA pension unless the period is excluded by section 8332(c)(2) and does not fall within the specified exceptions which allow double credit.
 
 
 17
 As an initial matter it should be understood that only military service time prior to civilian employment is at issue. Military service after the date of separation from civilian employment on which the CSRA annuity is based may not generally be credited to an employee. The provisions of section 8332(c)(2) are, thus, concerned with double-crediting of military service time preceding civilian service, that is, counting such military service both as part of a CSRA pension and as part of a military pension.
 
 
 18
 Babakitis does not assert that he fits within any of the exceptions delineated above to the double-crediting prohibition of section 8332(c). Further, he accepts that the statute would exclude his initial ten-year period of military service from his CSRA annuity if the disability pay he receives by reason of military service were based on that initial period of military service. See Noguera v. Office of Personnel Mgmt., 878 F.2d 1422 (Fed.Cir.1989) (period of military service giving rise to payment for disability by military excluded from CSRA annuity). Babakitis's argument is that, under 5 U.S.C. § 8332(c)(1)(A), he is entitled to count the ten years of military service prior to termination at NASA unless that service is excluded by 8332(c)(2), and that section 8332(c)(2) does not exclude those ten years because his military disability pension is not "based on" that "period of service." In sum, he argues that his initial period of military service has not been counted twice and, therefore, must be included in his CSRA pension.
 
 
 19
 Babakitis is correct, and the government does not disagree, that his initial ten years of military service has not been counted twice, as such, in determining his benefits for CSRA and for the military disability pension. To determine the amount of a disability retirement annuity, the Navy may use either of two methods, one based on the member's percentage of disability and the other on his length of service. In Babakitis's case, the Navy based his annuity on the percentage-of-disability method (which provided a larger amount), not on length of service. Thus, the initial ten-year period of military service did not enter into the Navy's calculation of the amount awarded. Moreover, his entitlement to a disability award came about solely by reason of incurring a disability during military service after he retired from NASA. Had he never previously served, he would still have been entitled to a 100 percent disability pension. Indeed, OPM does not disagree with any of these propositions. However, OPM successfully argued that Babakitis, nevertheless, received a military disability pension "based on" the initial ten-year period.
 
 
 20
 The Board accepted OPM's interpretation and rejected petitioner's view of the statute for two reasons. First, the Board held that an "exception" to the prohibition against dual credit should not be created based upon "mathematical computations." As we understand this rationale, the Board is saying that, because of the possibility of calculating the amount of the disability annuity on all years of military service, that possibility means the annuity is necessarily "based on" all periods of military service. We disagree.
 
 
 21
 We begin by pointing out that the question is not whether Babakitis falls within an "exception" to exclusion of military service. One does not get to the question of an exception unless the period of military service is being counted twice. The statute begins with a direction that credit shall be given for each period of military service before the annuitant separates from a civilian position. It is, thus, necessary to look first at whether Babakitis's military pension is based on his initial ten years in the military. The statute clearly contemplates that periods of military service may be looked at individually. Moreover, OPM interprets the statute to allow an annuitant to waive entitlement to a military pension, thereby freeing military time for credit to a CSRA account if it is to an employee's advantage--a benefit resulting from a purely "mathematical calculation." If the statute were as prohibitive as the Board views it to be, waiver would not be allowable.[1] In any event, we conclude that a pension is not based on a period of military service merely because it could have been based on such period. It must actually be based on such period.
 
 
 22
 OPM next argues that because the Navy used Babakitis's pay grade from his initial military service as an officer in calculating the amount of disability payment, rather than his enlisted Naval Reserve grade, Babakitis's disability annuity was "based on" his initial period of military service. OPM concludes, therefore, that Babakitis has received two separate retirement annuities, each based upon the same "period of military service." In other words, if Babakitis had had a higher pay rate at the end of his career, he would get both annuities but not if he had a lower pay rate at the conclusion. This appears to us to be a capricious interpretation of the statute, and we cannot agree that use of the higher grade converts the annuity into one "based on" the earlier period within the meaning of the statute.[2]
 
 
 23
 OPM's construction of a statute it administers is entitled to deference where the interpretation offered by OPM does not conflict with the express intent of Congress. Davis v. Office of Personnel Mgmt., 938 F.2d 1283, 1285 (Fed.Cir.1991) (citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). Here, we conclude that OPM's interpretation of section 8332(c)(2) is contrary to Congress's intent to give CSRA credit for each period of military service unless it results in impermissible double-crediting of that period. Here, it does not. The calculation of Babakitis's disability annuity was "based on" (1) a disability which occurred during his final period of military service and (2) the extent of his disability, not on the total length of his military service. Accordingly, the computation of Babakitis's civil service retirement annuity properly included his initial 10 year period of military service, and no overpayment of retirement benefits has occurred in violation of section 8332(c)(2).
 
 CONCLUSION
 
 24
 For the reasons stated above, the Board's affirmance of OPM's determination is
 
 
 25
 REVERSED.
 
 
 
 *
 Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation
 
 
 [1]
 We agree that allowing a waiver is appropriate and see no impediment to a partial waiver in appropriate circumstances
 
 
 [2]
 We also note the Navy advised OPM that Babakitis's disability pension was, in its view, based solely on his post-NASA period of service